[Cite as *Gary R. Gorby & Assoc., L.L.C. v. McCarty*, 2011-Ohio-1983.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

| | | |
|---|---|---|
| GARY R. GORBY & ASSOCIATES, LLC | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 2010 CA 71 |
| v. | : | T.C. NO. 07CV1656 |
| DAVID CHARLES McCARTY, etc., et al. | : | (Civil appeal from Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___22nd___ day of ___April___, 2011.

· · · · · · · · · ·

RICHARD F. HEIL, JR., Atty. Reg. No. 0033661, One South Limestone Street, Suite 800, P. O. Box 1488, Springfield, Ohio 45501
       Attorney for Plaintiff-Appellant

DANIEL C. HARKINS, Atty. Reg. No. 0029750 and MARK D. DeCASTRO, Atty. Reg. No. 0079505, 333 N. Limestone Street, Suite 203, P. O. Box 1125, Springfield, Ohio 45501
       Attorney for Defendant-Appellee

· · · · · · · · · ·

DONOVAN, J.

{¶ 1}   This matter is before the Court on the Notice of Appeal of Gary R. Gorby & Associates, LLC ("Gorby"), filed July 30, 2010.

{¶ 2}   On April 8, 2006, Gorby entered into an "Asset Purchase Agreement"

("Agreement") for the purchase of the ABA Insurance Agency of Springfield, Inc. ("Agency"). In addition to Gorby, the Agreement was signed by David McCarty ("McCarty"), individually and as President, and Cynthia McCarty, individually and as Secretary of the Agency. Gorby asserts that he "also acquired the name 'ABA Insurance Agency of Springfield,' which required Appellees David and Cynthia McCarty to change the name of their corporation from ABA Insurance Agency of Springfield, Inc., to ABA of Tampa, Inc."

{¶ 3} The Agreement provides that the aggregate purchase price is $350,000.00, and that $300,000.00 of that amount is allocated for the assets and book of business, with the remaining $50,000.00 allocated for a covenant not to compete. The "Non-Competition Agreement" provides as follows:

{¶ 4} "For a period of five (5) years from the date of closing, Seller, David C. McCarty, [and] Cynthia K. McCarty * * * shall not:

{¶ 5} "(a) Canvass, solicit, or accept any business for any other insurance agency, from any present or past clients of the Purchaser's agency.

{¶ 6} "(b) Give any other person, firm, or corporation the right to canvass, solicit, or accept any business for any other insurance agency, from any present or past clients of the Purchaser's agency.

{¶ 7} "(c) Directly or indirectly request or advise any present or future clients of the Purchaser's agency to withdraw, curtail, or cancel business with the Purchaser's agency.

{¶ 8} "(d) Directly or indirectly disclose to any other person, firm, or corporation the names of past, present or future clients of the Purchaser's agency.

{¶ 9} "(e) Directly or indirectly induce, or attempt to influence, any employee of the

Purchaser's agency to terminate employment with the Purchaser's agency.

{¶ 10} "(f) Directly or indirectly engage in the insurance business in Clark County in the State of Ohio, either as an employee, proprietor, partner, member or stockholder, except for Purchaser's agency."

{¶ 11} The Agreement also contains an arbitration provision that provides, "All disputes arising under this Agreement, which are not settled within thirty (30) calendar days after they arise, shall be settled by arbitration in Springfield, Ohio, conducted by a single arbitrator."

{¶ 12} According to Gorby, on March 9, 2007, David McCarty purchased a building located at 1237 North Limestone Street, in Springfield, and the Limestone premises are located within one mile of the Agency. McCarty leased the premises to Nancy Beth Turnmire, his niece and Gorby's former employee, who operated an insurance agency therein known as "Affordable Insurance Agency." According to Gorby, "the 'Agency formation' printout from the Ohio Department of Insurance's Website, attached as Exhibit C to the Verified Complaint, shows that ABA of Tampa, Inc., aka ABA Insurance Agency of Springfield, Inc., are the registered names of the competing insurance agency at 1237 North Limestone Street, * * * that Appellee David Charles McCarty is its President, and that Nancy Beth Turnmire and Tina Ann Turnmire are his Agents beginning July 19, 2007. In addition, the telephone number listed for the competing insurance agency with the Ohio Department of Insurance, 937-927-0711, is listed in the name of Dave McCarty in the 2007 AT&T Telephone Directory for Springfield and vicinity at the 1237 North Limestone Street address."

{¶ 13} On December 11, 2007, Gorby filed a verified complaint against McCarty, individually and as President and co-owner of ABA of Tampa, Inc., fka & dba ABA Insurance

Agency of Springfield, Inc., dba ABA 1, dba Affordable Insurance "(ABA"); Cynthia K. McCarty, individually and as Secretary and co-owner of ABA; ABA; Nancy Beth Turnmire and Tina Ann Turnmire. Gorby alleged, in part, breach of the parties' non-competition agreement and fraud, and he demanded, against each defendant, damages in an amount in excess of $350,000.00, punitive damages in excess of $700,000.00, reasonable attorney fees and costs. Gorby also filed a Motion for Preliminiary Injunction to "restrain Defendants from violating the terms of Plaintiff's Non-Competition Agreement with Defendants McCarty and their corporation * * * ." Finally, Gorby filed a Motion for Temporary Restraining Order.

{¶ 14} On December 11, 2007, the trial court granted the motion for a temporary restraining order. On December 13, 2007, Nancy Turnmire and Tina Turnmire filed a "Motion Requesting that Plaintiff Post Bond Pursuant to Civ.R. 65." The trial court issued an Entry on December 27, 2007, overruling the Turnmires' motion requesting bond.

{¶ 15} On January 17, 2008, an Agreed Permanent Injunction was issued, pursuant to which the Turnmires were enjoined, until April 12, 2011, from competing with Gorby.

{¶ 16} After multiple unsuccessful attempts, service of the complaint was perfected on the McCartys on August 27, 2008.

{¶ 17} On January 22, 2010, Gorby filed a Motion for Default Judgment against McCarty, Cynthia McCarty, and ABA ("Appellees"). According to Gorby, he learned that "over 90% of the clients of Defendants' competing insurance agency were his former clients that he had paid Defendants $350,000.00 to acquire." The trial court granted the motion without analysis, and the Default Judgment Entry provides that Gorby shall recover judgment from Appellees "for fraudulent misrepresentation, breach of contract, and pursuant to Defendants' indemnification

agreement, in the amount of $64,896.00 actual damages, $65,000 punitive damages, plus interest * * *, reasonable attorney fees, which are presently $21,363.79, and costs." On March 4, 2010, a Certificate of Judgment was issued and filed. On April 28, 2010, Gorby attempted to garnish the bank accounts of David McCarty and ABA.

{¶ 18} On June 18, 2010, Appellees filed a Motion for Relief from judgment, pursuant to Civ.R. 60(B), along with a supporting memorandum. According to Appellees, their right to arbitration, pursuant to the agreement, is a meritorious defense; their "failure to file an Answer to the Complaint is the result of excusable neglect," in that they "reasonably believed" that their counsel would file an Answer and Counterclaim; and their motion for relief is made within a reasonable time.

{¶ 19} Appellees asserted that they retained an attorney "to answer the Complaint and potentially pursue Counterclaims against" Gorby. Appellees asserted that they "tendered two retainer payments to [counsel], for a total of Two Thousand Dollars." Appellees averred that their attorney contacted counsel for Gorby in an attempt to negotiate a settlement, and that "negotiation failed to result in a settlement." Appellees asserted that Gorby did not serve a copy of the motion for default judgment on either them or their counsel.

{¶ 20} Attached to Appellees' memorandum is the affidavit of McCarty, which provides in part, "After the Complaint for the above-captioned matter * * * was filed, I retained Miguel A. Pedraza * * * to represent my interests in the above-captioned matter. * * * [Pedraza's] most recent billing statement indicated that Mr. Pedraza on May 29, 2008, was drafting an Answer and Counterclaim to be filed on my behalf in the above-captioned matter. Copies of the billing statements have been collectively marked and attached as Exhibit 1. * * * I recently learned that

Plaintiff obtained a Default Judgment against me. I was not served a copy of either the Motion for Default Judgment or the Default Judgment. Upon learning that Default Judgment had been entered against me, I retained new counsel to represent my interests in this matter. * * * My efforts to contact Mr. Pedraza about this matter have been unsuccessful. Mr. Pedraza has not responded to my efforts to ascertain his representation of my interests in this matter. Copies of my email messages to Mr. Pedraza have been collectively marked and attached as Exhibit B."

{¶ 21} Attached to the Affidavit as Exhibit I are billing statements from Pedraza to McCarty, dated March 10, 2008; May 5, 2008; and June 6, 2008. The first entry on the March statement, dated February 21, 2008, provides, in part, "Telephone and office conferences with client regarding Gary Gorby suit," and another entry, dated February 27, 2008, provides in part as follows: " * * * draft letter to Attorney Heil regarding Gorby suit." An entry on the May statement, dated April 28, 2008, provides, "Telephone call from Attorney Heil regarding his attempts at service of complaint and regarding David's potential counterclaim." An entry on the June statement, dated May 29, 2008, provides, "Review correspondence received from Attorney Heil regarding Gorby suit; begin researching and drafting answer and counterclaim." Attached as Exhibit B of the affidavit is a copy of the Asset Purchase Agreement. Significantly, there are no emails from McCarty to Pedraza attached to the affidavit as McCarty asserted.

{¶ 22} Gorby opposed the motion for relief from judgment. According to Gorby, "it is clear that the defaulting Defendants waived their right to arbitration and the Court is without authority to order arbitration. Therefore, the defaulting Defendants have no meritorious defense or claim to present * * *." Gorby noted that there were no emails attached to McCarty's affidavit, and he asserted, "David McCarty's Affidavit raises more questions than it answers and

certainly doesn't establish excusable neglect." Finally, Gorby asserted that Appellee's motion for relief from judgment was not made within a reasonable time.

{¶ 23} Attached to the "Motion in Opposition" is the Affidavit of Richard Heil, which provides in part as follows: "Attached hereto as Exhibit D are filed copies of all of my correspondence to and from attorney Miguel Pedraza in this matter, consisting of attorney Pedraza's one and only letter to me, dated, February 28, 2008, in which he invited settlement, my letter to him of April 2, 2008, presenting Plaintiff's settlement demand, and my follow-up letter to him of May 23, 2008, in which I acknowledge receiving no response to my settlement demand letter or my two follow-up phone calls, and advise him that if I do not receive a response to this letter, I will assume that David McCarty has no interest in settling this matter and proceed with my lawsuit. I have not received any further response from attorney Pedraza in this matter. In attorney Pedraza's letter to me, he notes that David McCarty has not yet been served with a summons and complaint. In a telephone conversation I had with Attorney Pedraza, after my receipt of his letter, I asked him if he would accept service for the McCarty's and their Corporation, ABA of Tampa, Inc., but he was unwilling to do so. In the filed copy of my May 23, 2008 letter to attorney Pedraza, my note to Gary Gorby notes my many failed attempts to serve the McCarty's and recommends that he hire a professional process server in Tampa, Florida."

{¶ 24} On July 19, 2010, the trial court issued an Entry, without a hearing or any analysis, sustaining the motion for relief and vacating the default judgment. The Entry provides, "defendants are granted leave to file an answer and/or counterclaim within the next twenty-eight days. No bond is required and an award for fees and costs is denied. The pending controversy is

referred to arbitration pursuant to the terms of the agreement."

{¶ 25} Gorby voluntarily dismissed the Turnmires on July 28, 2010, and filed a "Motion for a Partial Stay Pending Appeal; Motion in Opposition to Motion for Release of Certificate of Judgment; and Memorandum Approving Motions for Release from Garnishments," on July 30, 2010. The Appellees filed a Motion for Stay Pending Arbitration on July 30, 2010, which the trial court granted. The court also issued an "Order for Partial Stay Pending Appeal, Denying Motion for Release of Certificate of Judgment and Granting Motions for Release from Garnishments," which "DISMISSES Garnishment Case Nos. 10-GR-0047 and 10-GR-0048 [and] ORDERS a partial stay pending appeal, preserving Plaintiff's Certificate of Judgment, while Plaintiff's appeal is pending, and * * * DENIES Defendant's Motion for Release of Certificate of Judgment. * * * ."

{¶ 26} On August 11, 2010, Appellees filed an Answer. They also filed a Motion for Reconsideration of the trial court's entry ordering a partial stay, and preserving the Certificate of Judgment pending appeal, and denying their motion for release of certificate of judgment. According to Appellees, "the Certificate of Judgment was rendered a nullity when the Court provided relief from the previous Default Judgment. Accordingly, the Certificate of Judgment may not be preserved."

{¶ 27} Gorby asserts one assignment of error with subparts as follows:

{¶ 28} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR PREJUDICIAL TO PLAINTIFF-APPELLANT BY SUSTAINING THE CIV.R. 60(B) MOTION FOR RELIEF FROM JUDGMENT OF DEFENDANT-APPELLEES AND VACATING APPELLANT'S DEFAULT JUDGMENT AGAINST APPELLEES.

{¶ 29} "I.   THE APPELLEES ARE NOT ENTITLED TO RELIEF FROM JUDGMENT DUE TO EXCUSABLE NEGLECT, UNDER CIV.R.60(B)(1).

{¶ 30} "II.   THE APPELLEES ARE NOT ENTITLED TO RELIEF FROM JUDGMENT UNDER CIV.R. 60(B), AS THEIR MOTION WAS NOT FILED WITHIN A REASONABLE TIME.

{¶ 31} "III.   THE APPELLEES ARE NOT ENTITLED TO RELIEF FROM JUDGMENT UNDER CIV.R.60(B), AS THEY CANNOT ASSERT A MERITORIOUS DEFENSE OR CLAIM IF RELIEF IS GRANTED."

{¶ 32} Appellees respond that, in addition to relief pursuant to Civ.R.60(B)(1), an "attorney's failure to appear and represent his client may be considered extraordinary in nature and fall under the purview of Civ.R. 60(B)(5)."   They further assert that their motion was made within a reasonable time, and that their right to arbitration is a meritorious defense.

{¶ 33} Regarding the default judgment issued by the trial court, Civ.R. 55(A) provides, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default shall apply in writing or orally to the court therefor; * * * If the party against whom judgment by default is sought has appeared in the action, he * * * shall be served with written notice of the application for judgment at least seven days prior to the hearing on such application."   "The purpose of Civ.R. 55(A) is to prevent a defendant from employing inaction or delay as a litigation strategy in order to avoid or defeat a plaintiff's claim for relief."   *Med-Care Convalescent Supply, Inc. v. Grafton Associates* (March 31, 1995), Montgomery App. Nos. 14587, 14648.

{¶ 34} "A party appears in an action for purposes of Civ.R. 55(A) when that party

'clearly expresses to the opposing party an intention and purpose to defend the suit, regardless of whether a formal filing is made.' *Miamisburg Motel v. Huntington National Bank* (1993), 88 Ohio App.3d 117, 126, * * * ; *Dayton Modulars*, *Inc. v. Dayton View Community Dev. Corp.,* Montgomery App. No. 20894, 2005-Ohio-6257, ¶ 15.   Relying upon *AMCA Internat'l Corp. v. Carlton* (1984), 10 Ohio St.3d 88, * * * , we have stated that  'A party, or his counsel, who is aware of a communication by the opposing party in which that party has expressed a clear purpose to defend the suit has a duty to inform the trial court of this fact when seeking a default judgment against that party, and has an obligation under Civ.R. 55(A) to inform that party that application for a default judgment has been made.'  *Miamisburg Motel*, 88 Ohio App.3d at 127."  *Allstate Insurance Co. v. Hunt*, Montgomery App. No. 20991, 2006-Ohio-238, ¶ 13.

{¶ 35} In *Miamisburg Motel*, we affirmed the trial court's denial of Huntington National Bank's untimely motion for relief from default judgment, but we concluded that the trial court made an error of law when it found that the bank had not made an appearance within the meaning of Civ.R. 55(A).   While the bank had made no formal filings, counsel for the bank phoned counsel for Miamisburg Motel and expressed an intent to defend the suit and also requested an extension of time to file an answer to the complaint.   "The rule of *Miamisburg Motel* focuses on the fact of the litigation and the defendant's expressed intention to defend his rights in that proceeding, which at least accords with the notion of an 'appearance.'" *Allstate Insurance Co.,* Grady, P.J., dissenting.

{¶ 36} Civ.R. 55(B) provides, "If a judgment by default has been entered, the court may set it aside in accordance with Rule 60(B)."

{¶ 37} Civ.R. 60(B) provides in relevant part: "On motion and upon such terms as are

just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; * * * (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reason[] * * * (1) * * * , not more than one year after the judgment, order or proceeding was entered or taken. * * * ."

{¶ 38} To prevail on a motion pursuant to Civ. R. 60(B), a movant must establish that: (1) he has a meritorious defense or claim to present if relief is granted; (2) he is entitled to relief pursuant to 60(B)(1) - (5); and (3) the motion was made within a reasonable time, and, where the grounds of relief are Civ.R. (60)(B)(1), (2) or (3), not more than one year after the judgment or proceeding was entered or taken. *GTE Automatic Elec. v. Arc Industries, Inc.* (1976), 47 Ohio St.2d 146, 150-51. All three requirements must be met. Id., at 151.

{¶ 39} "[W]here timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." Id.

{¶ 40} In *GTE*, the trial court granted relief on the single ground that appellant's neglect was excusable. Quoting *Link v. Wabash R.R. Co.* (1962), 370 U.S. 626, 633-34, 82 S.Ct. 1386, 8 L.Ed.2d 734, the Supreme Court of Ohio addressed the issue as follows: "'There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyeragent and

is considered to have "notice of all facts, notice of which can be charged upon the attorney.'"

{¶ 41} "* * *

{¶ 42} "'* * * Surely if a criminal defendant may be convicted because he did not have the presence of mind to repudiate his attorney's conduct in the course of a trial, a civil (defendant) may be deprived of his (defense) if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit. And if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because * * * (defendant) should not be penalized for the omissions of his own attorney would be visiting the sins of * * * (defendant's) lawyer upon the * * * (plaintiff).'" Id. at 152.

{¶ 43} The *GTE* Court then defined excusable neglect in the negative, determining that the inaction of a defendant is not excusable neglect if the attorney's conduct "reveals a complete disregard for the judicial system and the rights of the [plaintiff]." Id., at 153.

{¶ 44} "Our review of the trial court's judgment is a narrow one. 'It is within the sound discretion of the trial court to decide whether to grant a motion for relief from judgment, and in the absence of a clear showing of abuse of discretion, the decision of the trial court will not be disturbed on appeal.'" *Hanks v. Burt* (Dec. 21, 1994), 99 Ohio App.3d 403.

{¶ 45} "''Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 46} "A decision is unreasonable if there is no sound reasoning process that would

support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Redevelopment* (1990), 50 Ohio St.3d 157, 161.

{¶ 47} Having reviewed the record, we conclude that the trial court abused its discretion in granting Appellees' motion for Civ.R. 60(B) relief. We agree with Gorby that Appellees failed to establish excusable neglect based upon the conduct of Pedraza, whom they voluntarily chose to represent them. We initially note that Appellees' conduct is distinguishable from that of the bank in *Miamisburg Motel*, in that Appellees failed to appear and did not express "a clear purpose to defend the suit." Accordingly, notice of the motion for default was not required and entry of the default judgment was not improper. While the billing statements attached to McCarty's affidavit indicate that Pedraza began researching and drafting an answer at the end of May, 2008, there is nothing to indicate that Pedraza entered an appearance or filed an answer. The final billing statement attached to McCarty's affidavit is dated two months before Appellees were properly served, and there is no evidence in the record of further contact between Appellees and Pedraza after service was perfected. There is no documentary evidence that Appellees advised Pedraza that they had been properly served so that an answer could be timely filed. Most significantly, the alleged emails establishing further communication between Appellees and Pedraza, cited in McCarty's affidavit, are absent from the record. Also, Pedraza was unresponsive to Heil. In other words, there is nothing before us from which to conclude that Appellees' inaction, in reliance upon Pedraza, was excusable.

{¶ 48} Further, Appellees' reliance upon *Kay v. Glassman, Inc.* (1996), 76 Ohio St.3d 18,

1996-Ohio-430, to support a finding of excusable neglect, is misplaced. In *Kay*, counsel for Glassman timely prepared and signed an answer, along with discovery requests which he gave to his secretary for mailing to the court and to counsel for Kay. The secretary was

{¶ 49} in the process of helping to sort out the law firm's bookkeeping system following the retirement of the firm's bookkeeper, and she mistakenly placed the above documents in the file drawer instead of mailing them. Attached to the motion for relief were the affidavits of counsel for defendant, the secretary, and the law clerk. The Ohio Supreme Court held that the attorney's conduct in that case constituted excusable neglect. Here, there is no such evidence of a simple shortcoming of which Appellees were unaware, and the case of *Pence v. Smith* (Nov. 7, 1994), Madison App. No. CA93-11-031, further relied upon by Appellees, supports our distinction. In *Pence*, the Twelfth District affirmed the trial court's vacation of a default judgment where "Appellee's attorney explained that no answer was timely filed because the attorney misplaced his client's file while in the process of moving his office. The attorney also complained that he had recently been assaulted and noted that he had been forced to begin a 'mass filing of continuances' in a number of courts." In contrast to *Kay* and *Pence*, the Appellees' inaction herein, in the face of Pedraza's alleged neglect, is not attributable to isolated events within Pedraza's office, and Pedraza's alleged neglect is properly imputed to Appellees. To hold otherwise would punish Gorby for Pedraza's conduct.

{¶ 50} Regarding Appellees' claim for relief pursuant to Civ.R. 60(B)(5), we initially note that Appellees did not make this argument below, and to be entitled to consideration thereof, Appellees should have advanced this basis for relief in the trial court. However, in the interest of addressing the case on the merits, we will briefly discuss this issue. Appellees direct our

attention to *CB Group, Inc. v. Starboard Hospitality, L.L.C.* (Dec. 17, 2009), Cuyahoga App. No. 93387, in  which a divided court determined that an "attorney's failure to appear and represent his client is not an 'excusable neglect' ground under Civ.R. 60(B)(1)," but rather constitutes conduct "of an extraordinary nature * * * within the purview of Civ.R. 60(B)(5)."  As Gorby notes in his Reply brief, the majority in *CB Group* relied upon our decision in *Whitt v. Bennet* (1992), 82 Ohio App. 3d 792.  In *Whitt,* the plaintiffs provided their attorney with answers to interrogatories and medical record authorizations, which the attorney failed to forward to defense counsel.  Counsel for plaintiff also failed to attend a hearing on defendant's motion to dismiss due to the failure to respond to discovery, and the plaintiffs' complaint was dismissed.  The trial court overruled plaintiffs' motion for relief from judgment.  In reversing the trial court , we determined, "the trial court erred in holding that the conduct of an attorney must be imputed to his client for purposes of Civ.R. 60(B).  That requirement has been made concerning Civ.R. 60(B)(1).  *GTE Automatic Elc. V. ARC Industries*, * * * .  The grounds contemplated in that rule are ordinary in nature.  The requirement has not been extended to the extraordinary circumstances contemplated in Civ.R. 60(B)(5).  Upon a review of the facts and circumstances the court may find that the client is responsible for some measure of the failures concerned.  However, fault should not automatically be imputed when an attorney has grossly neglected a *diligent* client's case and misleads the client to believe that his interests are being properly handled."  (Emphasis added).

{¶ 51} It is undisputed that Appellees had notice and knowledge of the suit against them.  Pedraza's billing records do not reflect that he filed an answer.  There is no evidence of any contact between Appellees and Pedraza after the final billing statement in June, 2008, two

months before service was perfected. In other words, there is nothing before us from which we can conclude that Appellees acted diligently or that Pedraza mislead them into thinking that he properly handled their interests, and Civ.R. 60(B)(5) relief is inappropriate.

{¶ 52} Having found that Appellees failed to satisfy the second prong of the *GTE* test, in that they are not entitled to relief pursuant to Civ.R. 60(B)(1) or (5), we need not address the remaining prongs of the test. In the interest of completeness, however, we proceed to note that the record is clear that Appellees failed to file their motion for relief from judgment within a reasonable time. Appellees did nothing to assert or protect their rights for 28 months, from the date of February 21, 2008, when McCarty first consulted with Pedraza, as the March billing statement indicates, until they filed their motion for relief from judgment on June 18, 2010. Further, Appellees waited four months after the default judgment was entered to seek relief therefrom. See *Adomeit v. Baltimore* (1974), 39 Ohio App.2d 97,106 ("Defendants had an affirmative duty to take some action after being served with the complaint and the amended complaint or risk having a judgment taken against them. The appellants made no attempt whatsoever in this case to protect their rights for 11 months after receiving notice of the complaint. They similarly took no action for 5 months after the default judgment was entered. Due diligence would have made them aware of these facts. Under all of the facts and circumstances enumerated above, although the defendants filed their motion for relief from judgment within one year it was not filed within a 'reasonable time.'"); *Warman v. Dunwoodie* (June 28, 1996), Montgomery App. No. 15581 ("'The relief offered by Civ.R. 60(B) is equitable in nature, and to be entitled to it a party must act diligently. Failure to seek that relief for a substantial period of time after the movant is aware of the grounds for relief demonstrates a lack

of due diligence * * * .'")(citation omitted).

{¶ 53} Finally, Appellees' assertion that their right to arbitration is a meritorious defense, in primary reliance upon *Baker v. Schuler*, Clark App. No. 02CA0020, 2002-Ohio-5386, also fails. In *Baker*, the plaintiffs moved for default judgment against Washington Square, one of four defendants, 52 days after filing their complaint, and default judgment was entered seven days later. Counsel for the remaining defendants, with whom plaintiff had entered into a stipulation agreeing to extend the date by which responsive pleadings were due, presented evidence that the stipulated extension of time applied to all four defendants. Counsel had moved to enforce the arbitration agreement between the plaintiff and all four defendants prior to the expiration of the extension of time. The trial court vacated the default judgment. In affirming the trial court's decision and overruling Appellant's first assigned error, namely that the court erred in setting aside the default judgment, we noted, "Washington Square demonstrated that its counsel represented it as well as the other defendants in the joint stipulation, and that counsel for the Bakers was aware of that fact. Omission of Washington Square from the 'defendants' who were identified in the stipulation was clearly a mistake on its counsel's part. He moved to vacate the default judgment promptly upon learning of it. And, Washington Square's right of arbitration was a meritorious defense in law to the Bakers' claims for relief." ¶ 23.

{¶ 54} Appellees quote *Baker* for the proposition that "R.C. 2711.02(B) requires a court to stay a trial pending the outcome of arbitration." Id., at ¶ 27. *Baker* and the matter herein, however, are procedurally distinct, in that the defendants in *Baker* moved the court to enforce the arbitration agreement between the parties. R.C. 2711.02(B) provides, "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in

which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall *on application of one of the parties* stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration." (emphasis added). By the plain language of the statute, it is a party's application for stay that triggers the relief that R.C. 2711.02(B) authorizes. R.C. 2711.02(B) has no application to our analysis herein; Appellees did not apply for a stay pending arbitration pursuant thereto until after the trial court vacated the default judgment (to which Gorby was entitled).

{¶ 55} Since Appellees failed to satisfy the test in *GTE*, Gorby's sole assigned error is sustained, and the judgment of the trial court granting Appellees' motion for relief from judgment will be reversed and vacated.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

Copies mailed to:

Richard F. Heil, Jr.
Daniel C. Harkins
Mark D. DeCastro
Hon. Douglas M. Rastatter